UNITED STATES, Appellee

v

RICHARD F. SCHULD, Private, U. S. Army, Appellant

8 USCMA 721, 25 CMR 225

No. 10,505

Decided February 21, 1958

*Major Edward Fenig* argued the cause for Appellant, Accused.
*First Lieutenant Thomas M. Lofton* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel John G. Lee.*

### Opinion of the Court

HOMER FERGUSON, Judge:
The sole question presented by this appeal is whether an accused, who was charged with and pleaded guilty to desertion from June 1942 until terminated by apprehension in March 1957, can be required to forfeit pay and allowances from the date of the action of the convening authority or must such forfeitures be deferred until the sentence is ordered executed. Holdings of the boards of review on this question have not been unanimous and we granted review to resolve the conflict. See United States v Swanner (CM 395225), May 29, 1957; contra, United States v Wentz (CM 394200), March 4, 1957, and United States v Smith (CM 393265), also March 4, 1957.

The operative facts which give rise to the issue are not in dispute and may be stated briefly. The accused, for his wartime desertion, was sentenced to be dishonorably discharged from the service, to forfeit all pay and allowances and to be confined at hard labor for three

**721**

years. The convening authority in his action approved the sentence and directed that the forfeitures apply to pay and allowances to become due on and after that date. The convening authority's action respecting forfeitures was taken pursuant to Article 57(a) of the Uniform Code of Military Justice, 10 USC § 857.[1] The applicable law respecting forfeitures in effect at the time the offense was committed in 1942, also permitted the convening authority to order into execution at the time of his approving action the forfeiture of all pay and allowances due and to become due.[2]

The Act of June 24, 1948 (62 Stat 627), as implemented by the Manual for Courts-Martial, U. S. Army, 1949, amended the then existing Articles of War. As a result of these changes, a convening authority could not order forfeitures into execution until completion of appellate review.[3] This law applicable to forfeitures remained in effect from February 1, 1949, the effective date of the 1949 Manual,[4] until May 31, 1951, the effective date of the Code, supra, and the Manual for Courts-Martial, United States, 1951.[5] The question for our determination therefore resolves itself into which law to apply concerning the question of forfeitures where the law in effect both at the time of the commission of the offense and at the time of trial permitted a greater punishment than that which existed under an intervening law.

In United States v Downard, 1 USCMA 346, 3 CMR 80, the accused, an officer, was convicted by general court-martial of conduct unbecoming an officer and a gentleman. The offense had occurred prior to, but the trial took place after, the effective date of the Code. Over defense objection, the law officer had instructed the court that a sentence to dismissal was mandatory if the accused were found guilty. The court found the accused guilty and sentenced him to dismissal. We held that the law officer's instruction constituted prejudicial error for while Article of War 95, 10 USC (1946 ed) § 1567, made dismissal of one convicted thereunder mandatory, Article 133 of the Uniform Code, supra, 10 USC § 933, provided that an officer found guilty of that offense may be punished as a court-martial shall direct. The punishment under Article 133 could possibly be lesser or greater than that required by Article of War 95. We concluded, therefore, that where the maximum punishment prescribed by the Uniform Code could be less than that fixed by the Articles of War and if the offense occurred under the Articles of War but was tried under the Code, the new and not the old maximum punishment is applicable. See Executive Order No. 10,214, February 8, 1951, 16 F. R. 1303. Our decision was based largely on policy considerations which required that an accused be given the benefit of the possibly lesser sentence allowed by the Code. We found that this view was supported by civilian court decisions which have held that "for policy reasons, an accused is entitled to the ameliorating action of the legislature where a new law, in effect at the time of trial, reduces the maximum sentence for a crime committed prior to the effective date of that law." United States v Downard, supra.

In the case at bar, however, the law in effect, both at the time of the commission of the offense and at trial was the same. It is only the law which was formerly in effect between February 1, 1949, and May 31, 1951, which is favorable to the accused. Our present inquiry, therefore, cannot rightly be de-

---

[1] "(a) Whenever a sentence of a court-martial as lawfully adjudged and approved includes a forfeiture of pay or allowances in addition to confinement not suspended, the forfeiture may apply to pay or allowances becoming due on or after the date the sentence is approved by the convening authority. No forfeiture may extend to any pay or allowances accrued before that date."

[2] Articles of War 46 and 50½, 10 USC (1946 ed) §§ 1517, 1522.

[3] Articles of War 16 and 50(e), 10 USC (1946 ed, Supplement I) §§ 1487, 1521; paragraphs 115 and 87b, Manual for Courts-Martial, U. S. Army, 1949.

[4] Executive Order No. 10,020, December 7, 1948, 13 F. R. 7519.

[5] Executive Order No. 10,214, February 8, 1951, 16 F. R. 1303.

cided by reference to our holding in *Downard.*

In United States v Ray, 7 USCMA 378, 22 CMR 168, we were confronted with a case where the accused had deserted the service in April 1951 and had remained absent until apprehended in August 1955. He was tried for a violation of Article of War 58, 10 USC (1946 ed) § 1530, and was sentenced to a dishonorable discharge, total forfeitures, and confinement at hard labor for twenty years. The convening authority approved the sentence and directed that the forfeitures should apply to pay and allowances becoming due on and after the date of his action. Since the accused's offense occurred prior to the Code, but after February 1, 1949, we had little difficulty in concluding that the convening authority's action, taken pursuant to Article 57(a) of the Code, supra, was "more onerous than that which was in effect at the time when this offense was committed." To have held otherwise would have been to give the provisions of the Code retroactive effect so as to increase the punishment for the offense committed.

In the Act of May 5, 1950—of which the Code is a part—Congress provided the following savings clause:

"All offenses committed and all penalties, forfeitures, fines, or liabilities incurred prior to the effective date of this Act under any law embraced in or modified, changed, or repealed by this Act may be prosecuted, punished, and enforced, and action thereon may be completed, in the same manner and with the same effect as if this Act had not been passed."[6]

A similar savings clause was included in the 1949 amendments to the Articles of War.[7] It is not unreasonable to as-

sume that Congress specifically provided these savings clauses to obviate any possible doubt and confusion which might arise as a result of the enactment of new legislation. Giving full force and effect to this statute, we must conclude that Congress intended that all offenses committed could be prosecuted and punished "in the same manner and with the same effect as if this Act had not been passed." Furthermore, this construction is completely in accord with the third proviso of Executive Order No. 10,214, February 8, 1951, 16 F. R. 1303, which prescribed the Manual for Courts-Martial, United States, 1951, and which provided: "That the maximum punishment for an offense committed prior to May 31, 1951, *shall not exceed the applicable limit in effect at the time of the commission of such offense."* (Emphasis supplied.)[8] The savings clauses of the Code and the Elston Act (Act of June 24, 1948), together with the Executive Orders prescribing the 1951 and 1949 Manuals, keep the pertinent provisions of the 1928 Articles of War in effect.

The accused cannot be heard to complain because the law in effect at the time the offense was committed and at trial was more severe than that which existed between the period of February 1, 1949, and May 31, 1951. If he desired to avail himself of the more favorable provisions of the law in effect between the latter dates, he had only to surrender himself during that period. Accordingly, we conclude that the action of the convening authority, in respect to the question of forfeitures, is correct.

The decision of the board of review is affirmed.

Chief Judge QUINN and Judge LATIMER concur.

---

[6] Section 4, Act of May 5, 1950, 64 Stat 108, 145.

[7] Section 245, Public Law 759, 62 Stat 604, 642.

[8] See also Executive Order No. 10,020, December 7, 1948, 13 F. R. 7519, for

the proviso that the maximum sentence for an offense committed prior to February 1, 1949, "shall not exceed the applicable limit in effect at the time of the commission of such offense."