UNITED STATES, Appellee

v

CARL L. BASKIN, Seaman Recruit,
U. S. Navy, Appellant

17 USCMA 315, 38 CMR 113

No. 20,292

December 15, 1967

*Lieutenant Peter F. Vaira,* USNR, argued the cause for Appellant, Accused. With him on the brief was *Captain John P. Gleeson,* USN.

*Commander Walter F. Brown,* USN, argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel C. R. Larouche,* USMC.

## Opinion of the Court

KILDAY, Judge:

Appellant was arraigned before a special court-martial convened at the Naval Training Center, Great Lakes, Illinois, charged with being absent without leave and failure to obey transfer orders, in violation of Articles 86 and 92, Uniform Code of Military Justice, 10 USC §§ 886 and 892, respectively. He pleaded guilty as charged and was sentenced to a bad-conduct discharge, confinement at hard labor for four months, and forfeiture of $50.00 per month for a like period. The convening authority reduced the period of the adjudged forfeitures, to provide for the forfeiture of $50.00 per month only for the period of confinement, but otherwise affirmed. The officer exercising general court-martial jurisdiction found error in the argument of trial counsel on sentence.

**315**

However, on reassessment he approved the sentence as mitigated by the convening authority. The board of review affirmed without opinion.

We granted appellant's petition to consider whether the president of this special court-martial erred prejudicially in failing to instruct the court on the limited purpose for which evidence of uncharged misconduct was received.

Following announcement of the findings of guilty, the appellant elected to make an unsworn statement in extenuation and mitigation. Therein he detailed, as a reason for the length of his absence,[1] the following:

"Sir, at the end of July I was involved in a stolen car. This car was stolen and I went to court on it. The case was continued from July to August; from August into September; and it kept on being continued until October. The latter part of October I was tried for aggravated assault. I had bonds over my head for five thousand dollars and ten thousand dollar bonds over my head or [sic] the aggravated assault charge. So, I had to get money to pay this bond out. From October to November I was still on this charge and they kept continuing this case. The case was dismissed on January the 6th for the stolen car, and the aggravated assault charge it was dismissed on the 11th of November. I had a disorderly conduct charge over my head on the 28th of November to the 13th of January. I was apprehended by the FBI in the courtroom on the 31st of January."

Despite the foregoing recitation of difficulty with the civilian criminal courts, the president gave no instruction to the court members on the limited purpose for which this evidence was received; that is, *that it could not be considered as proof that the appellant was a chronic violator of the law and deserved punishment.* This was error. United States v Rodriguez,

---

[1] The charged absence without leave covered the period July 5, 1966, to January 31, 1967.

17 USCMA 54, 37 CMR 318, and cases cited therein at page 55.

Part of the rationale behind the rule that it is error not to instruct on the limited purpose for which evidence of other misconduct is admitted is apparent in this case. Here the appellant desired to explain why he was absent without leave and did not report to his ship as ordered and, accordingly, detailed his involvement with the civilian criminal courts. The fact that the arrests and charges related by him did not result in convictions is immaterial for it is acknowledged that dismissal of charges is not tantamount to acquittal on the merits or discharge under circumstances amounting to acquittal. Cf. United States v Fisher, 16 USCMA 78, 36 CMR 234; United States v Kidd, 13 USCMA 184, 32 CMR 184. The stigma still remains. Especially is this so where, as here, large bonds are set to insure the attendance of the suspected offender. In such circumstances the inference is overwhelming that the dismissal of charges was for reasons other than a lack of guilt. Were the instruction not available to him, he would be forced to forego his explanation.

The Government contends there should be no requirement for limiting instructions when *general evidence* relevant to appropriateness of sentence indicates uncharged misconduct and urges us to seriously consider modification or even elimination of the rule propounded in *Rodriguez.* Essentially, the Government bases its view on the fact that an unsworn statement in mitigation is not evidence and the accused cannot be cross-examined on it; that it is generally offered by an accused or his counsel in hope of obtaining leniency on sentence and should be considered as a trial tactic; that the cases relied on in *Rodriguez* were inapplicable; and that boards of review have experienced difficulty in determining whether or not misconduct is actually present.

Our opinion in *Rodriguez* was handed down just a few short months

ago.[2] Since the principle involved was apparent and the views of the Judges of this Court were then unanimous, a *per curiam* opinion merely establishing that principle and citing prior cases as authority was believed sufficient. In light of the Government's current contention, perhaps additional explanation is in order.

Paragraph 75c(2), Manual for Courts-Martial, United States, 1951, permits an accused to submit an unsworn statement to the court in mitigation or extenuation of the offenses of which he stands convicted. This unsworn statement is not evidence, and the accused cannot be cross-examined upon it, but the prosecution may rebut statements of fact therein by evidence. The essential purpose of this portion of the proceedings is "to aid the court in determining the kind and amount of punishment to be imposed" (Manual, supra, paragraph 75a); accordingly, the rules of evidence may be relaxed. United States v Franchia, 13 USCMA 315, 32 CMR 315.

Matter in extenuation of an offense serves to explain the circumstances surrounding the commission of the offense, including the reasons that activated the accused, but not extending to a legal justification. Matter in mitigation has for its purpose the lessening of the punishment to be assigned by the court or the furnishing of grounds for a recommendation for clemency. See, generally, Manual for Courts-Martial, supra, paragraph 75c (3)–(4).

Since the purpose of the post-findings proceedings is to aid the court members in determining an appropriate sentence, the law has always held it desirable to encourage the *free flow* of such information, particularly from the accused. In United States v Stivers, 12 USCMA 315, 30 CMR 315, we restated this proposition of openness, citing Ferguson v Georgia, 365 US 570, 5 L ed 2d 783, 81 S Ct 756 (1961), and Green v United States, 365 US 301, 5 L ed 2d 670, 81 S Ct 653 (1961), and held therein that

the Government was precluded in a retrial of an accused from using his statement in mitigation given at the first trial even though it amounted to a judicial confession of guilt. Rule 32 of the Federal Rules of Criminal Procedure bears upon this issue. Paragraph (a) provides in pertinent part that, "Before imposing sentence the court shall afford the defendant an opportunity to make a statement in his own behalf and to present *any* information in mitigation of punishment." (Emphasis supplied.) This Rule also provides for a presentence investigation by the office of the probation service of the court and for a report which

". . . shall contain any prior criminal record of the defendant and such information about his characteristics, his financial condition and the circumstances affecting his behavior as may be helpful in imposing sentence or in granting probation or in the correctional treatment of the defendant, and such other information as may be required by the Court." [Rule 32 (c)(2), 18 USC.]

With this foundation in mind, we examine the issue before us. At this point in the trial an accused has been found guilty and what he then presents is, in effect, a plea for clemency. He is urged, under military rules, and those prevailing in the Federal District Courts, to present *any* information which he or his counsel believes will further this goal. It would be anomalous and defy logic were he to be required to walk a tightrope in making this decision. (Cf. Jones v United States, 362 US 257, 4 L ed 2d 697, 80 S Ct 725 (1960), where the Supreme Court, in the interest of justice, abolished a previously existing dilemma faced by one who, charged with possession of contraband, found it necessary to assert a possessory interest, and thus convict himself as charged, in order to assert a motion to suppress.) If, in the process, it is believed necessary or desirable to admit to acts which any reasonable person would construe as evidence of

---

[2] May 26, 1967.

317

misconduct, he is made to exercise a choice between disclosure and admittance because of a lack of a right, *sua sponte,* to clarifying instructions, the very intention of the procedure would be subverted. It is not a question of tactics in the sense that one must choose between disclosure and concealment. No responsible individual, be he the accused or his counsel, would choose to voluntarily admit to acts of misconduct which would be detrimental, at a time when he is pleading for leniency, if he believed it would damage his case. The value and need for a limiting instruction, that is, to place the evidence in proper context, is at once apparent.

Perhaps the best illustration of our thinking is that which faced us in *Rodriguez,* and our action in that case. There the appellant pleaded guilty to, and was convicted of, wrongful possession, sale, and use of marihuana. In mitigation, the members of the court were informed that smoking marihuana was " 'an old thing' " for Rodriguez because he had been doing it since he was twelve years of age and " 'everybody seems to do it where he comes from.' " United States v Rodriguez, supra, at page 55. Since no instruction was given as to the limited purpose for which the court could consider this evidence of offenses not charged, we reversed the decision of the board of review as to sentence and ordered a rehearing thereon. Rodriguez and his counsel obviously believed it would be of benefit to the former were they to explain the circumstances surrounding the charged offenses and to admit to his long-term use of marihuana, in a social atmosphere where it was not considered unusual, inferentially asserting that this situation was not something recently contrived for the thrill of it all.

In the case at bar, this appellant, likewise, desired to "explain" his predicament in the obvious hope of receiving leniency. In so doing, he was compelled to admit to involvement with the police *and the civilian criminal courts* in matters which can only be described as serious, especially in view of the rather high monetary bonds set for his appearance. Because the charges were *dismissed,* he was unable to point to an acquittal as evidence of a judgment by his peers that he was not guilty as charged. Rather, for reasons not disclosed, and about which we will not speculate, he had to be content with reciting a court action under circumstances not amounting to an acquittal on the merits. For aught we know, these charges may be subject to revival and trial held at some future date. In any event, the testimony was damaging for it painted the appellant as one who has a predisposition for running afoul of the law. To offset this picture, a limiting instruction was required. United States v Rodriguez, supra.

We do not deal here with evidence of other offenses received during trial on the merits of the case. See, generally, United States v Britt, 10 USCMA 557, 28 CMR 123; United States v Bryant, 12 USCMA 111, 30 CMR 111; United States v Robertson, 14 USCMA 328, 34 CMR 108; United States v Baldwin, 17 USCMA 72, 37 CMR 336. There are specific rules governing the admissibility and applicability of such evidence as exemplified by the cited cases, and the extent to which the court may consider it. The principle, however, remains the same. While an accused may not be impeached by cross-examination as to specific acts of misconduct, unless such acts resulted in conviction of a felony or crime of moral turpitude (United States v Robertson, supra), no such stringent proof as a conviction is required to attack the credibility of an ordinary witness (United States v Berthiaume, 5 USCMA 669, 18 CMR 293) or, of more pertinence, to attack the reputation or character of an accused himself, when it is placed in issue (United States v Baldwin, supra). It goes without saying that one's character is a central issue of the post-finding proceeding.

The fact that there was no request for such an instruction is not controlling. In United States v Bryant, supra, we noted that while some cases in Federal courts indicate that absent a

defense request it is not prejudicial error to fail to instruct, we went on to state:

"... In our opinion, however, the better rule is that the instruction is a necessary concomitant of such evidence." [United States v Bryant, supra, at page 115.]

Although, as in *Rodriguez,* the sentence imposed by the court-martial in the case at bar was reduced by intermediate authorities, the reason for such reduction was not connected with the error found herein. The effect of this instructional error on the sentence has not yet been considered. Corrective action, therefore, is still required. United States v Rodriguez, supra.

The decision of the board of review is reversed and the record of trial is returned to the Judge Advocate General of the Navy. The board may reassess the sentence or order a rehearing thereon.

Chief Judge QUINN and Judge FERGUSON concur.