UNITED STATES

v.

**Second Lieutenant Dwayne H. MILLER, 241–21–4584, United States Air Force.**

ACM 29377.

U.S. Air Force Court of Military Review.

Sentence Adjudged 10 May 1991.

Decided 18 June 1992.

Appellate Counsel for the Appellant: Colonel Jeffrey R. Owens and Major Mary C. Yastishock.

Appellate Counsel for the United States: Lieutenant Colonel Brenda J. Hollis and Major Paul H. Blackwell, Jr.

Before LEONARD, RIVES, and JAMES, Appellate Military Judges.

OPINION OF THE COURT

RIVES, Judge:

This fraternization case was correctly charged and adequately prosecuted; however, because the members were not properly instructed, we must reverse appellant's conviction.

The appellant, Second Lieutenant Dwayne H. Miller, was tried by a general court-martial composed of officer members. Contrary to his pleas, he was convicted of wrongfully engaging in sexual intercourse and oral sodomy with an airman "assigned to the same unit, same flight, and under [his] supervision," in violation of Article 133, UCMJ, 10 U.S.C. § 933. His adjudged sentence to a dismissal was approved by the convening authority.

Appellant served as a flight leader in the security police squadron. He was the first officer in the chain of command over Airman First Class Tammy Franklin. For a period of several weeks, the two had a sexual relationship. Appellant warned Franklin not to discuss their sexual encounters because they "could get in trouble" if

anyone found out. In the midst of their affair, appellant was counselled on Air Force policies against fraternization by his operations officer. That officer testified that he specifically told appellant, "you absolutely will never date any women in our organization; you just don't do that." According to Franklin, she ended the relationship "because there were too many rumors going around. We were afraid we would get caught and get in trouble." Throughout this period, appellant had administrative, disciplinary, and supervisory responsibilities over Franklin.

■ In his assigned error, appellant urges that the evidence is legally and factually insufficient to support his conviction. But for an instructional error by the military judge, we would disagree and affirm appellant's conviction. Appellant's guilt was factually proven. *See* Article 66(c), UCMJ, 10 U.S.C. § 866(c); *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Turner*, 25 M.J. 324, 325 (C.M.A.1987). This Court has recognized that a "commander or supervisor who fraternizes sexually with someone under his command or supervision clearly violates a long-standing custom of the Air Force." *United States v. Parrillo*, 31 M.J. 886, 891 (A.F.C.M.R. 1990), *aff'd*, 34 M.J. 112 (C.M.A.1992). In this case, the government proved the illicit sexual relationship between appellant, an officer-supervisor, and Airman Franklin, his enlisted-subordinate.

■ In a fraternization case, findings instructions are especially crucial.[1] In the Article 39(a) session on proposed instructions in this case, the military judge stated his "intent to give all the elements of fraternization, along with the element that it's conduct unbecoming an officer." He there-after based his instructions on Department of the Army Pamphlet 27–9, *Military Judges' Benchbook* (Change 3, 15 February 1989).[2] He instructed the members on the elements as follows:

In the specification of the charge the accused is charged with the offense of conduct unbecoming an officer and a gentleman, with the underlying offense being fraternization. In order to find the accused guilty of this offense, you must be convinced by legal and competent evidence beyond a reasonable doubt, of the following elements:

First, that between on or about 1 August 1990 to on or about 31 October 1990, the accused was a commissioned officer.

Second, that within the territorial limits of the State of Texas, from on or about 1 August 1990 to on or about 31 October 1990, the accused fraternized on terms of military equality with Airman First Class Tammy Franklin, by engaging in a sexually intimate relationship to include sexual intercourse and oral sodomy.

Third, that the accused then knew Airman Franklin to be an enlisted member.

Fourth, that such fraternization violated the custom of the Air Force, that officers shall not fraternize with enlisted members on terms of military equality.

Fifth, that under the circumstances the conduct of the accused was to the prejudice of good order and discipline in the armed forces, or was of a nature to bring discredit upon the armed forces.

Sixth, that under the circumstances the accused's conduct was unbecoming an officer and a gentleman.

The military judge then provided the pattern discussion from the *Benchbook* that follows the listing of the elements for fraternization and for conduct unbecoming an

---

1. Fraternization has been a volatile charge in the Air Force, particularly since *United States v. Johanns*, 20 M.J. 155 (C.M.A.1985), *cert. denied*, 474 U.S. 850, 106 S.Ct. 147, 88 L.Ed.2d 122 (1985), *aff'g* 17 M.J. 862 (A.F.C.M.R.1983). The appellate courts in *Johanns* decided that an unmarried Air Force officer was not guilty of the crime of fraternization when he engaged in "mutually voluntary, private, non-deviate sexual intercourse with an enlisted member, neither under his command nor supervision." 20 M.J. at 158, *citing* 17 M.J. at 869. As discussed in this opinion, many subsequent appellate cases have refined the issue of fraternization in the Air Force.

2. The fraternization instruction used by the military judge is at paragraph 3–152.lb and the form for the Article 133 element is at paragraph 3–122b(3) of the *Benchbook*.

officer. In response to a court member's question as to whether he could have a copy of the elements, the military judge advised: "I do not have written instructions. I will be glad to read again any of the definitions or elements."[3]

The members were furnished a copy of the charge and specification.[4] The record demonstrates they carefully tested the specification against the judge's instructions in their effort to apply the law to the facts as they found them. Before court was closed for deliberations, the president of the panel asked the military judge to review the elements of the offense. The judge complied by repeating the elements exactly as he had previously instructed the members.

After deliberating for over an hour, the court took a lunch recess. When the members returned from their recess, the president raised a question about "modifying" the specification. One member explained the underlying concern when he said: "May we give you an example? Say the accused was accused of rape and we decided that he did have sexual intercourse but not what would be legally rape." The judge responded by discussing the concept of lesser included offenses; he noted there were none in this case. The question again showed the members' conscientious efforts to apply the law to the facts. Court closed, and after half an hour of deliberations, the members returned to have the court reporter play back the testimony of Airman Franklin.

After another hour and a half of deliberations, the members returned to ask that the "fourth element" be read to them again. The military judge had earlier twice listed that element as: "Fourth, that such fraternization violated the custom of the Air Force, that officers shall not fraternize with enlisted members on terms of military equality." In response to the question, however, the military judge advised the members of his "fifth" element: "That under the circumstances the conduct of the accused was to the prejudice of good order and discipline in the armed forces, or was of a nature to bring discredit upon the armed forces." The judge then repeated the definition of "conduct prejudicial to good order and discipline." The president next asked for the "last" element to also be repeated. The judge responded with his "sixth" element: "That under the circumstances the accused's conduct was unbecoming an officer and a gentleman," and followed with the explanation of that element as contained in the *Benchbook*. After further deliberations, the members returned with their findings of guilty.

The members' repeated and diligent efforts to apply the law to the facts in reaching their findings is noteworthy. The government's efforts to draft a viable specification is also commendable. The charge here was clearly worded to conform with fraternization cases that have been sustained on appeal. The language in the specification that Airman Franklin was "assigned to the same unit, same flight, and

---

3. While the judge committed no error in failing to provide written copies of his instructions to the members, R.C.M. 920(d) does provide that written instructions (or portions of them) may be given to members for their use in deliberations. In *United States v. Turner*, 30 M.J. 1183 (A.F.C.M.R.1990), this Court commended the trial judge for providing written findings instructions to the members. We observed that such a practice "significantly reduces the possibility of misunderstanding instructions and the need for returning to open sessions in the middle of deliberation to re-instruct or answer questions on instructions." *Id.* at 1185 (footnote). Providing a written copy of the instructions that were given in this case would not have rectified the error, but the process of doing so may have helped to produce instructions properly tailored to the specification—avoiding the error.

4. The specification, as provided to the members, states:

In that SECOND LIEUTENANT DWAYNE H. MILLER, United States Air Force, 7th Security Police Squadron, Carswell Air Force Base, Texas, did, within the territorial limits of the State of Texas, on divers occasions from on or about 1 August 1990 to on or about 31 October 1990, knowingly, wrongfully, and dishonorably engage in a sexually intimate relationship to include sexual intercourse and oral sodomy with Airman First Class Tammy Franklin, an enlisted person assigned to the same unit, same flight, and under the supervision of said Second Lieutenant Dwayne H. Miller, said conduct, being that which is unbecoming an officer and gentleman.

under [appellant's] supervision," had been endorsed by appellate military courts well before appellant's trial convened. *See United States v. Appel*, 31 M.J. 314, 317 (C.M.A.1990); *United States v. Wales*, 31 M.J. 301, 308 (C.M.A.1990); *Parrillo*, 31 M.J. at 891–92. Unfortunately, the military judge did not adequately tailor his instructions to the well-drafted charge. *See* R.C.M. 920(a), Discussion; *see also United States v. Graves*, 1 M.J. 50, 53 (C.M.A.1975) (military judge has primary responsibility for assuring members are properly instructed).

 It is rare for a trial judge *not* to include the precise language of a specification when he details the elements for members.[5] The judge here, however, offered little more than the generic definition of an Article 133 fraternization offense. Had he simply added the charged language that Airman Franklin was "assigned to the same unit, same flight, and under [appellant's] supervision" to his listing of the elements, this conviction might well have been sustainable. The judge had another opportunity to correct this error when the members presented their final request for clarification during deliberations. When the members asked to have the "fourth element" repeated, the military judge could have repeated his earlier discussion and *added* an explanation of the "custom of the Air Force" that appellant was alleged to have violated. The failure of the judge to provide appropriate advice to the members is fatal to appellant's conviction.

In *United States v. Fox*, 34 M.J. 99, 103 (C.M.A.1992), the Court of Military Appeals noted that, "to find that appellant violated Air Force custom as to fraternization, [the members] must find beyond a reasonable doubt that there existed at the time a superior-subordinate or supervisory relationship between appellant" and his paramour. The Court reaffirmed its decision in *Wales*, 31 M.J. at 308, that the members must be specifically instructed on the supervisory relationship in order to convict. *Fox*, 34 M.J. at 103. Senior Judge Everett explained:

> [T]here *is* no violation of the Air Force fraternization custom when an officer and an enlisted person engage in private, consensual sexual relations *unless* there is a superior-subordinate or supervisory relationship between them. Thus, in the Air Force, whether one characterizes that relationship as "a separate 'element'" or whether one characterizes it as the critical *definition* of the custom, failure to give the instruction discussed in *Wales* effectively sends the members off willy-nilly like an unguided missile.

*Id.* Here, the military judge did not provide a definition of "custom," nor did he instruct on the need to find the supervisory relationship (as charged). Since they had not been given proper advice, we cannot be certain the members found a violation of the Air Force custom against such fraternization. The error involves a question of fact that can only be resolved by members who have been properly instructed. *See United States v. Wilson*, 26 M.J. 10, 13 (C.M.A.1988).

We have considered whether the instructional error here is harmless error, and we conclude that it is not.[6] Article 59(a), UCMJ, 10 U.S.C. § 859(a); *United States v. Mance*, 26 M.J. 244, 255–56 (C.M.A.), *cert. denied*, 488 U.S. 942, 109 S.Ct. 367, 102 L.Ed.2d 356 (1988). The prejudice in the case at bar is manifested by the members' numerous unsuccessful efforts to receive more information on the elements. The "custom" element of the fraternization offense is critical; the instructions here offered "no definition, no guidance, no focus" on the meaning of that term. *Fox*, 34 M.J. at 104. Since the members were pro-

---

5. We make this observation as a matter of judicial notice, upon consideration of the other records this Court has reviewed. *See United States v. Koneski*, 4 M.J. 911, 914 (A.F.C.M.R. 1978).

6. We have also evaluated the possibility of waiver under R.C.M. 920(f). As in *Fox*, the appellant

here did not object to the trial judge's failure to provide appropriate instructions to the members. The Court of Military Appeals found plain error in *Fox*, 34 M.J. at 103, as we do here. *See United States v. Fisher*, 21 M.J. 327, 328–29 (C.M.A.1986).

vided no guidance to determine whether a custom had been violated, this conviction cannot be sustained.

Accordingly, the findings of guilty and the sentence are set aside. A rehearing is authorized.

Senior Judge LEONARD and Judge JAMES concur.